**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAUDIA SHULER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-4160** |
| | : | |
| **TIMEPAYMENT CORP** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                             **June 5, 2020**

A restaurant owner disappointed with her purchase of allegedly damaged equipment now hopes to sue the company financing her purchase. She hopes to remove adverse credit reporting of her decision not to pay the installments on the purchase. She has yet to serve her complaint and summons after several flawed attempts. We most recently granted her leave to serve by April 21, 2020 but then the COVID-19 mitigation and stay-in-place orders shut down most commercial activity. The financing company defendant now moves to dismiss because she did not serve by April 21, 2020. It is being unreasonable. The restaurant owner failed to effect service and she has not pursued all available means of service. But we grant her a discretionary extension to serve the third amended Complaint and summons upon the financing company defendant one last time until July 6, 2020.

**I.     Undisputed background on initial service.**[1]

In August 2016, restaurant owner Saudia Shuler agreed to rent equipment from TimePayment Corporation for $4166.00.[2] The equipment arrived damaged.[3] Ms. Shuler told TimePayment the equipment did not work, but TimePayment did not fix the problem.[4] Ms. Shuler paid $254.12 to TimePayment as an installment towards the total debt in December 2016.[5]

TimePayment reported Ms. Shuler owed a balance of $8339.00, but she had only agreed to pay $4166.00.[6] TimePayment incorrectly reported Ms. Shuler's open account as "closed," the

account type as "other," and the payment status as "charge off."[7] Though Ms. Shuler agreed to payment terms of either thirty-three or thirty-six months, TimePayment reported a one-month payment term.[8]

TimePayment's inaccurate reports damaged Ms. Shuler's credit score.[9] She reported the inaccuracies to no avail.[10] Her low credit score negatively impacted her business opportunities and relations.[11] Ms. Shuler could not purchase a food truck as she had previously intended.[12]

TimePayment called Ms. Shuler more than seventeen times, although she asked them to stop calling and explained there had been a mistake.[13] She became stressed and anxious because she had to explain the recurrent calls to her business associates and friends.[14]

Ms. Shuler seeks damages and an injunction directing TimePayment to amend her credit score.[15] On September 9, 2019, she *pro se* sued TimePayment for allegedly violating the Fair Credit Reporting Act.[16] Ms. Shuler represented she paid a process server $200.00 to serve TimePayment personally at its Burlington, Massachusetts facility.[17] The process server swore she personally served TimePayment at its Burlington facility, but TimePayment swore she did not.[18] The proof of service does not provide a date for the alleged personal service.[19]

A United States Postal Service tracking receipt attached to the proof of service indicates in addition to paying the process server to serve TimePayment personally, Ms. Shuler sent the summons by certified mail on November 21, 2019.[20] TimePayment confirmed it received a copy of the summons on November 25, 2019.[21] The summons did not include the complaint.[22]

TimePayment received a second copy of a summons on January 20, 2020 through Federal Express.[23] The second summons did not include the complaint or a signature.[24]

On January 22, Ms. Shuler filed a second amended complaint.[25] The same day, TimePayment received a third copy of a summons, also without the complaint or a signature.[26] An

unidentified person left the first page of the summons unattended at TimePayment's office.[27] TimePayment moved to dismiss.[28]

On February 28, we granted TimePayment's motion to dismiss but allowed Ms. Shuler to file a third amended complaint by March 13, 2020.[29] Ms. Shuler filed the amended Complaint on March 13, 2020.[30] On March 16, 2020, we ordered Ms. Shuler to properly serve her summons and third amended Complaint upon TimePayment by April 21, warning her case could be dismissed if she did not effect service.[31] The Clerk of Court issued the summons for the third amended Complaint on March 16, 2020 requiring service (absent our March 16, 2020 Order) by June 16, 2020. Ms. Shuler did not serve TimePayment by April 21 but alleged she made two attempts to serve TimePayment in March.[32] She did not move for more time; but under Rule 4(m) she is afforded until June 16 to effect service.

**II.    Analysis**

TimePayment now moves to dismiss arguing insufficient service of process of the third amended Complaint and summons.[33] Ms. Shuler counters we should excuse her failure to serve because stay-in-place Orders to mitigate COVID-19 is good cause.[34] We find she has not yet served the summons and third amended Complaint given the COVID-19 effect on workplaces and she would otherwise have until June 16, 2020 to serve TimePayment, we grant additional time to effect service under any one of multiple means of service.

    **A.    Ms. Shuler failed to properly serve TimePayment.**

TimePayment argues we should dismiss Ms. Shuler's third amended Complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), noting the party making the service has the burden of demonstrating its validity when an objection to service has been made.[35] Rules 4(c)(1) and 4(h) obligate Ms. Shuler to serve a TimePayment officer,

3

managing or general agent, or any other agent authorized by appointment or law to receive service of process, with a copy of the summons and the complaint.[36] Under Rule 4(m), Ms. Shuler had ninety days after filing her complaint to properly serve TimePayment.[37]

Ms. Shuler's first attempt at service failed because TimePayment did not receive the summons allegedly delivered in person by Ms. Shuler's process server.[38] She instead served TimePayment with the summons through certified mail.[39] She did not include the complaint as required by Rule 4(c)(1).[40] Ms. Shuler's second attempt at service also failed because she sent the summons through Federal Express and it did not have the requisite complaint or signature.[41] Ms. Shuler's third attempt at service failed because an unknown person left the summons unattended at TimePayment's office instead of delivering it to an authorized agent.[42] She also did not attach the complaint and signature.[43] Ms. Shuler amended and filed her Complaint as we instructed in our February 28, 2020 Order but did not serve TimePayment within thirty days.[44]

### B.   Ms. Shuler does not demonstrate good cause for her failure to serve TimePayment.

Because Ms. Shuler did not timely serve TimePayment, we must either dismiss her action without prejudice or order the service be made within a specified time if there is a reasonable prospect service may yet be obtained.[45] If we could reasonably expect Ms. Shuler would properly serve TimePayment given extra time, we would grant her more time for service.[46] Ms. Shuler has made three improper attempts at service and failed to effectuate service a fourth time during the thirty-day extension we granted her in March 2020.

We must first determine whether Ms. Shuler demonstrates good cause for her failure to serve TimePayment to date.[47] Absent good cause we must consider whether to grant her a discretionary extension.[48] To establish good cause for failed service, we consider three factors: "(1) the reasonableness of plaintiff's efforts to serve; (2) whether the defendant is prejudiced by

4

the lack of timely service; and (3) whether the plaintiff moved for an enlargement of time to serve."[49]

We cannot find Ms. Shuler's service efforts on the initial complaint to be reasonable because she relied on a process server to serve TimePayment and failed to attach the complaint to the summons several times.[50] As a *pro se* litigant, we give Ms. Shuler some flexibility when applying procedural rules, but she "must still comply with the same procedural rules that apply to all other litigants."[51] Although TimePayment was likely not prejudiced by Ms. Shuler's lack of proper service because it had actual notice of the lawsuit, "notice cannot by itself validate an otherwise defective service."[52] Ms. Shuler did not move for an enlargement of time. These factors do not demonstrate good cause for her failed service.

We also address Ms. Shuler's argument in her May 25 response. She contends she had good cause for failing to timely serve TimePayment her third amended Complaint because TimePayment's offices were closed due to COVID-19.[53]

Ms. Shuler correctly recognized our Court of Appeals equated good cause with "excusable neglect" in *MCI Telecommunications Corp. v. Teleconcepts, Inc*.[54] But the court held the *MCI* plaintiff did not have good cause for failing to serve defendants even though the plaintiff had to attempt service at several different locations.[55] The court explained having "alternative means of service and the ability to extend the time indicate a lack of diligence and weigh against a finding of good cause."[56]

Ms. Shuler has alternative means of service. Service of process may be made "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[57] Ms. Shuler correctly recognized under Massachusetts law, "the court may on application of the plaintiff issue an order of notice in

the manner and form prescribed by law" if the plaintiff cannot "find . . . the defendant, nor defendant's last and usual abode, nor any agent upon whom service may be made in compliance with this subsection."[58]

Under Massachusetts law, every corporation is required to have a registered agent.[59] A registered agent is a person authorized to accept service of process for a corporation.[60] In Massachusetts, a registered agent can also be a domestic or not-for-profit corporation, or a foreign corporation qualified to do business in the Commonwealth.[61] As a matter of public record, TimePayment's registered agent is listed as Corporation Service Company.[62] Corporation Service Company has a COVID-19 blog regarding office closures.[63] The Massachusetts location is currently open with no reported issues.[64] Ms. Shuler could serve TimePayment through its registered agent at any time during the extension granted by the March 16 Order.

If Ms. Shuler had difficulties serving TimePayment's registered agent due to COVID-19, service by a court order of notice is a valid method of service in certain limited circumstances under Massachusetts law.[65] While COVID-19 is likely a sufficient reason to grant an order of notice, we need not reach this issue because Ms. Shuler never applied for one.

Though Ms. Shuler attempted to serve TimePayment through certified mail on March 26, service may not be made upon a corporation through the mail in Massachusetts.[66]

Ms. Shuler also has alternative means of service under Pennsylvania law because Federal Rule of Civil Procedure 4 allows her to follow state law "where the district court is located."[67] Like Massachusetts law, Pennsylvania law allows Ms. Shuler to serve TimePayment's registered agent if TimePayment cannot be reached because its office is closed.[68] Though Pennsylvania law permits Ms. Shuler to make service upon a corporation by mail, it requires "a receipt signed by the defendant or his authorized agent."[69] While Ms. Shuler could not obtain the necessary signature

by sending the summons and complaint to TimePayment's closed office in Massachusetts, she could send it to the open office of TimePayment's registered agent.

Ms. Shuler also had the ability to extend the time for service.  As she indicated in her May 25 response, she attempted to serve TimePayment personally at its Massachusetts facility in March but was unsuccessful because the office was closed.[70]  After her failed Federal Express shipment on March 26, Ms. Shuler had nearly a month left to serve TimePayment. But she neither attempted service again nor requested an extension.  As a district court in our circuit noted:

> While the Court is mindful that the COVID-19 pandemic is presenting ongoing disruption to all aspects of everyday life, the Court must ultimately carry on with its business. The parties must pay attention to Court-ordered deadlines or otherwise keep the Court apprised of any circumstances that might justify extensions, particularly when the Court—on its own accord—affords the parties additional time to respond to a particular motion.[71]

We have given Ms. Shuler several opportunities to amend her complaint and effect service on TimePayment. Though COVID-19 complicates service, Ms. Shuler could have applied for an order of notice under Massachusetts law or requested an extension of time. We noted in our March 16 Order we could dismiss Ms. Shuler's case if she did not effectuate service by April 21.[72] Regardless, she waited until her time to serve TimePayment had expired under our Order and raised the issue of COVID-19 complications only once TimePayment moved to dismiss her complaint.[73]  We find Ms. Shuler has not demonstrated good cause for her failure to serve TimePayment.

### C. COVID-19 mitigation effects warrant a discretionary extension of time to complete service.

Even absent good cause, we may use our discretion to extend Ms. Shuler's time to serve TimePayment or to dismiss her case without prejudice.[74]  As our Court of Appeals held in *Chiang v. U.S. Small Bus. Admin.*, we may consider actual notice of the legal action; prejudice to the

7

defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel, in addition to any other factor relevant in deciding whether to grant an extension or dismiss the complaint.[75] One compelling factor against granting Ms. Shuler an extension is she has had several chances to serve TimePayment properly and failed each time. She also failed to use alternative means of service afforded by both Pennsylvania and Massachusetts law, including serving a registered agent.

But more factors weigh in favor of extending Ms. Shuler's time for service: TimePayment has actual notice of the legal action and will suffer minimal prejudice if we allow Ms. Shuler another opportunity for service.[76] Ms. Shuler is a *pro se* plaintiff.[77] Her claim may be time-barred by the Fair Credit Reporting Act's statute of limitations.[78] We have a strong preference to decide cases on their merits rather than procedural deficiencies.[79] COVID-19 presents unprecedented challenges to litigation. As one court recently noted, "corresponding with *pro se* plaintiffs is particularly difficult in the context of a work from home situation. . . . Defendants are not physically present to receive mail sent to the office, and therefore are unable to reliably receive correspondence from *pro se* plaintiffs."[80] Though COVID-19 closures have presented Ms. Shuler with a challenge before her litigation with TimePayment has begun in earnest, we find her situation comparable.

Although when "a discretionary extension of time is unlikely to yield any fruitful results, dismissal of the complaint without prejudice . . . for failure to timely effect service [is] appropriate,"[81] the governor of Massachusetts recently released a phased approach to reopening the Commonwealth.[82] Starting June 1, financial service businesses are allowed to reopen as long as they comply with certain health regulations.[83] TimePayment, a commercial finance company

8

specializing in equipment, falls under this category and may reopen soon, suggesting Ms. Shuler's future attempts to serve TimePayment at its Massachusetts office may be more productive.

TimePayment moves to dismiss Ms. Shuler's complaint with prejudice. Our Court of Appeals mandates "when a district court dismisses an action for lack of proper service [under Rule 4(m)] it 'must dismiss the action without prejudice.'"[84] In *Mathies v. Silver*, our Court of Appeals noted claims dismissed without prejudice function as claims dismissed with prejudice if the statute of limitations has tolled.[85] Because dismissing her claim without prejudice would likely result in prejudice to Ms. Shuler, we find it appropriate to grant her a discretionary extension of time to serve TimePayment.

Under Federal Rule of Civil Procedure 4(m), Ms. Shuler had ninety days from the time she filed her complaint to serve TimePayment. Though our March 16 Order limited the usual ninety days to thirty, COVID-19 warrants amending that Order.

## III. Conclusion

Ms. Shuler did not serve TimePayment as required by the Federal Rules of Civil Procedure and our March 16 Order. She has not demonstrated good cause for her failure of service because of the alternative methods she might use to serve TimePayment even during the pandemic. We find Ms. Shuler's efforts validate a discretionary extension and grant her leave to serve her third amended Complaint and summons to TimePayment consistent with the accompanying Order. We deny without prejudice TimePayment's Motion to dismiss for insufficiency of service, to be renewed if Ms. Shuler does not effectuate timely service on this extension.

---

[1] "Despite Iqbal's heightened pleading requirements, the district court must be more flexible in its interpretation of *pro se* pleadings." *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014); *see Higgs v. Attorney General of the United States*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (September 19, 2011) ("[W]hen presented with a *pro se* litigant, we 'have a special

obligation to construe his complaint liberally.'" (quoting *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999))).

[2] ECF Doc. No. 29 at 3.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 3-4.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.* at 3-4.

[12] *Id.* at 3.

[13] *Id.* at 2, 4.

[14] *Id.*

[15] *Id.* at 7.

[16] ECF Doc. No. 31 at 4.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4-5.

[23] *Id.* at 5.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] ECF Doc. No. 24 at 1.

[30] ECF Doc. No. 31 at 6.

[31] ECF Doc. No. 30 at 1.

[32] ECF Doc. No. 32 at 2.

[33] Federal Rule of Civil Procedure 12(b)(5); ECF Doc. No. 31 at 1.

[34] EDF Doc. No. 32 at 2-3.

[35] EDF Doc. No. 31 at 6 (quoting *White v. Green*, No. 09-1219, 2009 U.S. Dist. LEXIS 92999, 2009 WL 3209647, at *2 (E.D. Pa. Oct. 6, 2009)).

[36] *See* Fed. R. Civ. P. 4(c)(1), 4(h).

[37] *See* Fed. R. Civ. P. 4(m).

[38] ECF Doc. No. 31 at 4.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 5.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] Fed. R. Civ. P. 4(m); *Muhammad v. Pa. Dep't of Educ.*, No. 18-2647, 2019 WL 1552567, at *5 (E.D. Pa. Apr. 10, 2019) ("When there is a 'reasonable prospect' [] service may be obtained,

---

dismissal of the complaint is 'inappropriate.'" (quoting *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)).

[46] *Muhammad*, 2019 WL 1552567, at *5.

[47] *See M. K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.,* 751 F. App'x 204, 206-07 (3d Cir. 2018) (citing Fed. R. Civ. P. 4(m)); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995) ("If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.").

[48] *Barlowe*, F. App'x at 207 (quoting *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)).

[49] *Muhammad*, 2019 WL 1552567, at *5 (citing *Bailey v. Harleysville Nat. Bank & Tr. Co.*, No.04-1541, 2005 WL 174843, at *1 (E.D. Pa. Jan. 26, 2005)).

[50] *Petrucelli*, 46 F.3d at 1307 (citing *Braxton v. United States*, 817 F.2d 238, 242 (3d Cir. 1987)).

[51] *Muhammad*, 2019 WL 1552567, at *2 (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

[52] *Ayres v. Jacobs & Crumplar*, 99 F.3d 565 (3d Cir. 1996) (quoting *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993)).

[53] ECF Doc. No. 32 at 2.

[54] Fed. R. Civ. P. 6(b)(1); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir. 1995); *see also* ECF Doc. No. 32 at 2.

[55] *MCI*, 71 F.3d at 1097.

[56] *Id.* (citing *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 85 (3d Cir. 1987).

[57] *See* Fed. R. Civ. P. 4(e)(1); see also Fed. R. Civ. P. 4(H)(1)(A) (a corporation may be served in the manner prescribed by Rule 4(e)(1)).

[58] Ma. R. Civ. P. 4(d)(2).

[59] *Id.*

[60] *Agent*, Black's Law Dictionary (11th ed. 2019).

[61] Mass. Gen. Laws Ann. ch. 156D, § 5.01 (West).

[62] *Corporations Division Business Entity Summary*, Secretary of the Commonwealth of Massachusetts,

---

http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=UJGLN_q9_vXeY0xnTg9RTSEt1V0m.z2RWE57Po.EMtE- (last visited June 5, 2020) (listing Corporation Service Company's address as 84 State Street, Bos., Ma., 02109).

[63] *Covid-19 Known State Closures/Delays*, CSC, https://www.cscglobal.com/blog/covid-19-state-closings/#state-closures (last updated June 4, 2020).

[64] *Id.*

[65] *Swenson v. Mobilityless, LLC*, No. 19-30168, 2020 WL 2404835, at *1 (D. Mass. May 12, 2020).

[66] Ma. R. Civ. P. 4(d)(2); *Fried v. Wellesley Mazda*, No. 0809–0032 at *2 (Mass. App. Div. 2010) (finding a domestic corporation with a registered agent necessitates personal service by plaintiff).

[67] *See* Fed. R. Civ. P. 4(e)(1); see also Fed. R. Civ. P. 4(H)(1)(A) (a corporation may be served in the manner prescribed by Rule 4(e)(1)).

[68] Pa. R. C. P. 424.

[69] *Scalla v. KWS, Inc.*, No. 18-1333, 2018 WL 6271646, at *4 (E.D. Pa. Nov. 30, 2018).

[70] ECF Doc. No. 32 at 2.

[71] *Hector v. Gov't of Virgin Islands*, No. 18-00055, 2020 WL 2549284, at *1 (D.V.I. May 19, 2020); *see also Long v. McAfee*, No. 19-00898, 2020 WL 2307305, at *1 (E.D. Cal. May 8, 2020) ("Though plaintiffs assert a few new arguments—[] the current COVID-19 health emergency will make future service difficult, [] service by publication should be allowed, and [] defendants are evading service—none of these arguments meaningfully refute the magistrate judge's findings or explain why plaintiffs have repeatedly failed to comply with the court's orders and failed to properly serve defendants as required under Rule 4(m)"); *see also Martin v. Saul*, No. 19-2232, 2020 WL 2079974, at *1 (C.D. Cal. Apr. 30, 2020) ("[T]he present COVID-19 pandemic may present additional obstacles for plaintiff . . . but even so, if plaintiff faces some obstacle in effecting service, it is plaintiff's responsibility to notify the court of this and request an extension of time.").

[72] ECF Doc. No. 30 at 1.

[73] *Compare* ECF Doc. No. 32 at 2, *with Macias v. Fasail*, No. 19-00728, 2020 WL 2542028, at *2 (N.D. Cal. May 19, 2020) ("On March 24, 2020, the day before the deadline to serve Defendants and file proofs of service, Plaintiff filed an administrative motion asking the court for a thirty-day extension to properly serve Defendants and file proofs of service. ECF No. 27. In light of the ongoing COVID-19 pandemic, the Court granted Plaintiff's request for a thirty-day extension.").

[74] *Barlowe*, F. App'x at 206-07 (citing Fed. R. Civ. P. 4(m)).

[75] *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009).

---

[76] ECF Doc. No. 31 at 4 (TimePayment confirmed it received the summons in the mail).

[77] *Muhammad*, 2019 WL 1552567, at *2 ("A pro se complaint should be dismissed only if it appears 'beyond doubt [] the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972))).

[78] The Fair Credit Reporting Act's statute of limitations may bar Ms. Shuler's claim if we dismissed her case. The Fair Credit Reporting Act allows Ms. Shuler to bring her claim within two years after the date she discovered the violation. 15 U.S.C. § 1681p(1). Ms. Shuler pleads she rented the equipment from TimePayment in August 2016. If she discovered the alleged violations of the Fair Credit Reporting Act more than two years before she filed this action, her claims may be time barred.

[79] *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (quoting *Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 472 (4th Cir. 1993)).

[80] *Herrera v. City of New York*, No. 19-3216, 2020 WL 1879075, at *2 (S.D.N.Y. Apr. 15, 2020).

[81] *Maltezos v. Giannakouros*, 522 F. App'x 106, 108-09 (3d Cir. 2013) (footnote omitted) (first citing *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997); then citing *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305-06 (3d Cir. 1995)).

[82] Reopening Massachusetts: Guidance for industries on the reopening plan (June 1, 2020), https://www.mass.gov/doc/guidance-for-industries-on-the-reopening-plan/download.

[83] *Id.*

[84] *Meade v. Reynolds*, No. 17-3625, 2020 WL 1867916, at *2 (3d Cir. Apr. 14, 2020) (citing Fed. R. Civ. P. 4(m)); *M. K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*, 751 F. App'x 204 (3d Cir. 2018) (citing Fed. R. Civ. P. 4(m)).

[85] *Mathies v. Silver*, 266 F. App'x 138, 139 n.1 (3d Cir. 2008).